HEIRS OF A. LLEDÓ, Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO ET AL., Respondents.

No. 349.    Argued November 20, 1945.—Decided November 29, 1945.

*Victor J. Vidal González* for petitioner. *A. De Jesús* and *A. Sandín del Manzano* for the Manager of the State Fund. *E. Cornier Martínez* for the beneficiaries.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

In July 1944, the Heirs of A. Lledó, employers insured in the State Insurance Fund and engaged in the manufacture and sale of ice in the city of Ponce, hired Concepción Santiago, a young workman, to work as a helper of a motor truck which said employers used in the sale and distribution of ice. On August 16, 1944, while young Santiago was discharging the duties of his employment, upon attempting to climb the truck he slipped on the running board of the vehicle, fell to the ground, was run over by one of the rear wheels of the truck, and was killed.

The Manager of the Fund ruled that the accident was compensable. He awarded compensation in the sum of $2,000 to the parents of the deceased workman and he further held that the employers should pay to the claimant parents a like sum, on the ground that the workman had been employed by the employers in violation of the provisions of the Act to Regulate the Employment of Minors. (Act No. 230 of May 12, 1942, Sess. Laws, p. 1298.) On May 1, 1945, the Industrial Commission of Puerto Rico affirmed the ruling of the manager; and it having refused to reconsider its decision, the employers thereupon instituted in this court the present proceeding for review.

1. The first ground of the petition for review is that the Industrial Commission erred in applying to the decision of the instant case the doctrine laid down by this court in *Montaner* v. *Industrial Commission,* 54 P.R.R. 64, wherein the claimant was the injured minor himself, whereas in the present case the claimants are the parents, who were dependent upon the salary of the minor for their support and knew that the latter was illegally employed. The petitioning employers urge that they had been induced to error as to the age of the boy by the false and fraudulent representations of the minor himself and of his claimant father and by the physical appearance of the workman, who seemed to be over 18 years of age at the time when he was hired and showed strength, capacity, and ability in the performance of his work. In support of their contention they invoke the provisions of subdivision 5 of § 3 of the Workmen's Accident Compensation Act, as the same was specifically amended by Act No. 162 of May 14, 1943 (Laws of 1943, p. 524).

2. As a second error, the petitioners assigned the failure of the commission to hold that the parents of the minor were precluded from recovering a double penalty as they were *in pari delicto* with the employers; and the latter further urge that, since the parents had been guilty of violating the law, they should not be permitted to derive any benefit or unjust enrichment from their illegal conduct.

3. Lastly, the petitioners urge that the weighing of the evidence by the commission was so arbitrary and erroneous that it constitutes a grave error of law, reviewable by this court.

Let us examine the laws in force at the time of the death of the workman Concepción Santiago.

Section 3 of Act No. 230 of May 12, 1942 (Laws of 1942, p. 1298), entitled "An Act to Regulate the Employment of Minors, etc.," provides that "no minor between fourteen (14) and less than eighteen (18) years of age shall be employed, permitted, or suffered to work in, or in connection

with, any gainful occupation" for longer periods than those specified in the same Section and § 4 of said Act. According to § 5, in order that the minor may be permitted to work the number of hours authorized by the statute, it is necessary that "his employer obtain and keep in his files and accessible to any official, . . . . an employment certificate of a special permit issued in accordance with the provisions hereinafter contained in this Act. . . ."

Section 15 of the same Act provides that "no minor under sixteen (16) years of age shall be employed, or permitted, or suffered to work in, or in connection with, any of the following occupations which are declared injurious to health and life." Among the hazardous occupations enumerated in said Section is the following: "As driver or helper of a motor vehicle meaning by helper any person riding in the vehicle who does any work in connection with the distribution of merchandise."

According to the birth certificate of the minor Concepción Santiago, he was born on February 1, 1930. Therefore, on August 16, 1944, when the accident occurred, he was 14 years, 6 months, and 16 days old. The evidence showed that said minor was working as a helper of a motor vehicle; that he was riding in the vehicle; and that the work he performed was connected with the distribution of ice among the customers of his employers. This being one of the occupations characterized by the Act (§ 15, *supra*) as "injurious to health and life," the employment therein of a minor under 18 years of age such as was Concepción Santiago, constituted a violation of the statute.

■■ The fifth paragraph of § 3 of the Workmen's Accident Compensation Act, as amended by Act No. 162 of 1943 (Laws of 1943, p. 524), provides:

"*Rights of Minors.*—In the case of workmen under eighteen (18) years of age, employed in violation of the laws regulating the employment of minors in force on the date of the employment, who suffer injuries, . . . . the compensation belonging to them for any

permanent disability they may suffer, *or to their beneficiaries in case of death,* shall be double the amount belonging to a workman eighteen (18) years of age legally employed;'' (Italic ours.)

Undoubtedly realizing that the grant of double compensation to the parents of minors employed in violation of the law might constitute an incentive for slightly scrupulous parents, or for those who might be in need of increasing their income for family support, to trick the employers into the belief that their children had attained the age required by the statute, the lawmaker added to the fifth paragraph of said § 3 the following:

"*Provided,* That the double penalty to which this Section refers shall not be applicable to the case of an employer who has been induced to error *by the physical appearance of the minor or by a sworn statement made by the father,* the mother, or the tutor or guardian of the minor prior to the minor's employment, stating that he is of age. *Provided, further,* That the employer shall pay the additional compensation hereby prescribed, etc.'' (Italic ours.)

The lawmaker, then, has granted to the beneficiaries of a minor employed in violation of the law, the right to receive double compensation for the death of the minor resulting from a labor accident. In order that the employer may be exempt from the obligation thus imposed upon him, he must prove (1) that the physical appearance of the minor induced him to believe that the minor had really attained the age fixed by the statute; or (2) that he was induced to error by a sworn statement made by the father, the mother, or the guardian of the minor prior to the latter's employment, setting forth that the minor had attained the age which enabled him to be lawfully employed in the kind of occupation in which he was injured or killed.

In the case at bar, the petitioning employers based their claim for exemption on the two sole grounds acknowledged by the statute; and in order to establish their claim, they introduced oral testimony which was contradicted by the evidence adduced by the beneficiaries.

Manuel Benítez Rexach, a contractor, on behalf of the employers testified that on several occasions young Santiago went to his office—which adjoins that of the petitioning employers—and applied for work stating that he had worked before in the ice plant; that he, Benítez, asked the boy: "What about your father?" and the boy answered: "I have a father"; that a few days afterwards the boy came back accompanied by his father, who, upon being questioned by Benítez, stated that the boy was about 19 years of age; that the witness estimated that the boy was strong, about 5 feet and 3 inches high, weighing approximately 125 pounds, and was 18½ or 19 years old; that Benítez took both the father and the boy to Antonio Lledó, to whom he recommended the boy as a robust one, and repeated the father's statement to the effect that the boy was about 19 years of age; that Lledó asked the father about the boy's age and the father answered that he was about 19 years old; that Lledó assigned the boy to a truck used for the distribution of ice, and the witness saw the boy on several occasions carrying ice blocks which weighed from 75 to 100 pounds.

Antonio Lledó and two other witnesses testified to the same effect as Mr. Benítez Rexach regarding the physical appearance and probable weight and age of the deceased workman.

In opposition to the evidence adduced by the employers, the father of the minor testified that the boy was 14½ years old at the time of his death; that he never went with his son to the office of Benítez; that he never gave to either Lledó or Benítez any information regarding the age of his son, and that such information was never requested from him; that no one had asked him permission to hire his son for work with the Heirs of Lledó and that he would not have granted such permit, as he wanted his son to study; that his son was neither fat nor thin and was about 5 feet and ¼ inch high; that he was not and could not be robust, as he was the child of a poor man and sometimes if he ate at noon

he did not eat at night; that he learned that his son was working for Lledó, but he did not know that he was employed on the trucks for delivering ice, nor in any heavy work; that he thought that the boy was employed as a sweeper and to do errands. The other witnesses introduced by the beneficiaries stated that the boy was "a schoolboy" neither fat nor thin; and that judging from his physical appearance or build he seemed to be 14 or 15 years old.

The commission which saw and heard the witnesses for both parties testify, adjusted the conflict in the evidence as to the physical appearance of the boy by according credit to the testimony of the father and his witnesses, to the effect that the boy's age seemed to be what it really was, namely, from 14 to 15 years. The testimony of the witness Benítez Rexach could not have great probative value. If it was true, as stated by said witness, that young Santiago was strong and robust and seemed to be 18½ or 19 years of age, what reason could Benítez Rexach have for asking the boy whether he had a father and suggesting to him that he return accompanied by his father in order to employ him? Was not that doubt on the part of Mr. Benítez Rexach the best proof that the physical appearance of the minor had not induced him, nor Mr. Lledó, to erroneously believe that they were dealing with a young man who had attained the legal age for work? The evidence introduced by the beneficiaries and believed by the commission is sufficient to support the decision sought to be reviewed.

In order to establish lawfully the defense that in hiring the minor the employer was induced to error by the father, the mother, or the guardian of the minor, the statute requires that there should be introduced as evidence of that fact "a sworn statement made by the father, the mother, or the guardian of the minor prior to the minor's employment. stating that he is of age." That statutory requisite, which is a guaranty for both the employer and the father of the minor, was not complied with in this case. No sworn state-

ment made by the father or the mother of the boy was intro-duced in evidence. The commission admitted testimony as to the statements attributed to the father, which the latter categorically denied. The commission decided the conflict by giving full credit to the testimony of the father. We do not feel warranted in interfering with the finding of the commission.

Perhaps it might be better for the protection of the minors if the statute, instead of imposing on the employer the obligation of paying to the beneficiaries of the minor additional compensation in an amount equal to that to be paid by the State Fund, should exempt the Fund from the payment of any compensation in these cases affecting minors and impose on the employer the duty to pay the normal compensation fixed by the statute, as in the case of an uninsured employer. Thus, the incentive of receiving double compensation would be eliminated and the minor protected against exploitation by either the empoyer or the parents.

Under all the facts and circumstances of the instant case, and especially in view of the fact that the minor was employed to work in an occupation perilous to health and life, for which no authority could be lawfully granted by his parents nor by the officers of the Department of Labor, we hold that the Industrial Commission did not err in imposing on the petitioners the payment of said double compensation.

The decision sought to be reviewed should be affirmed.